IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                                      :
                                                            :
FREDDY VICTOR GARRIDO JIMENEZ          :        Case No. 05-02111(ESL)
                                                            :        Chapter 7
     Debtor                                                 :
_____    :
                                                            :
WILFREDO SEGARRA MIRANDA, as            :
Chapter 7 Trustee for the Estate of             :
Freddy Víctor Garrido Jiménez                     :
                                                            :        ADVERSARY NO. 06-0236
     Plaintiff                                              :
                                                            :
v.                                                          :
                                                            :
RD CAPITAL GROUP, INC.;                      :
RAMON DOMINGUEZ;                              :
JORGE BLUM; ABC INSURANCE.;          :
DEF INSURANCE CORP.                           :
                                                            :
     Defendants                                         :
_____    :


## OPINION, REPORT AND RECOMMENDATION

### TO THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO:

This adversary proceeding is before the court for the limited purpose of determining

whether the arbitration agreements signed by Mr. Virgilio Garrido (also referred to as "Virgilio")

and Ms. Catherine Ríos (also referred to as "Catherine"), relative to accounts opened with RD

Capital Group, Inc. ("RD Capital") are valid and enforceable as to Mr. Freddy Víctor Garrido

Jiménez (the "Debtor" or "Freddy Víctor"). Plaintiff, the Chapter 7 trustee for the estate of the

Debtor, alleges that the arbitration agreement signed by Mr. Virgilio Garrido and Ms.Catherine

Ríos (Accounts 6RD-008525 and 6RD-008905) cannot be enforced against the Debtor, Freddy

Víctor Garrido Jiménez, because he did not sign the same. Plaintiff also alleges that the

agreements are null and void pursuant to applicable state law, that is, because the consent was obtained through deceit, there was no consideration, and the agreement was contrary to law and good morals as it was intended to conceal assets from Debtor's creditors. After considering the evidence presented at the hearings and the parties' legal memoranda, the court finds that the arbitration agreements are unenforceable as to the Debtor, Mr. Freddy Víctor Garrido Jiménez, and do not bind the Chapter 7 trustee, as the representative of the Debtor's estate. However, since the issue is a non core related matter, the bankruptcy court does not have authority to enter a final order. Consequently, the instant OPINION is a report and recommendation to the U.S. District Court.

### **NATURE OF THE COMPLAINT**

Before the court is an adversary proceeding commenced by the Chapter 7 trustee against RD Capital, Ramón Domínguez (Domínguez) and Jorge Blum (Blum) to recover damages suffered as a result of the defendants' acts in conspiring with the Debtor to hinder, delay and defraud his creditors[1], as well as to recover for the decline in value of the accounts, ill-gotten gains in commissions, interest and other benefits as a result of overtrading and sale of securities on margin. Plaintiff pleads as statutory predicates to the complaint breach of fiduciary duties under the laws of Puerto Rico; 31 L.P.R.A. §§ 3018, 5141; and violations to the Securities and Exchange Act of 1934, 15 U.S.C.A. § 78a, et seq. and the Securities and Exchange Commission

---

[1] In February 2006 the Debtor, Mr. Freddy Víctor Garrido Jiménez plead guilty to count one of the indictment in CRIM. NO. 06-322 (DRD). The count states that "[f]rom on or about March 9, 2005, to on or about March 16, 2006, in the District of Puerto Rico and elsewhere and within the jurisdiction of this Court, Freddy Víctor Garrido-Jiménez, the defendant herein, knowingly and fraudulently concealed property of the estate of the defendant from the bankruptcy trustee, creditors, and the United States Trustee in connection with a case under Title 11, namely, In re Freddy Víctor Garrido Jiménez, No. 05-02111, in the United States Bankruptcy Court, District of Puerto Rico. Specifically, the defendant knowingly and fraudulently concealed at least the following properties: ... (d) an amount of at least $204,852.90."

-2-

Rule 10b-5; and unjust enrichment.

RD Capital is a brokerage firm organized and existing under the laws of the Commonwealth of Puerto Rico. Domínguez and Blum are principals, and President and Vice President respectively, of RD Capital.

## **FACTS**

The parties have stipulated to the following uncontested facts: RD Capital is a brokerage house authorized to and conducting business in the Commonwealth of Puerto Rico; Ramón Domínguez is the President of RD Capital; Jorge Blum is the Chief Compliance Officer of RD Capital; these defendants never met personally with Virgilio Garrido; these defendants never met personally with Catherine Ríos; these defendants never spoke to Catherine Ríos; Virgilio Garrido never had any personal contact with any person from RD Capital; Catherine Ríos never had any personal contact with any person from RD Capital; and, Debtor, Freddy Víctor Garrido Jiménez, met with Ramón Domínguez and Jorge Blum and with nobody else from RD Capital concerning accounts 6RD-008525 and 6RD-008905.

The testimonial and documentary evidence presented at the hearing will be considered for the limited purpose of determining whether there is a valid arbitration agreement.

Mr. Domínguez testified that he met Mr. Freddy Víctor Garrido Jiménez in 1978 when he used his services as a locksmith. Although Mr. Domínguez has known Mr. Freddy Víctor Garrido Jiménez for a long time, he does not consider him his friend. On one occasion Mr. Domínguez gave Mr. Freddy Víctor Garrido Jiménez the amount of $10,000 to play "Lotto" because he thought that Freddy Víctor had a "system" since he had won the Lotto before. Mr. Domínguez gave Freddy Víctor the money to play Lotto after an account had been opened with RD Capital in Mr. Virgilio Garrido's name. Mr. Domínguez lost the $10,000.

- 3 -

In 2004 Mr. Freddy Víctor Garrido Jiménez called Mr. Domínguez to invest funds that his brother had won in the lottery. Mr. Domínguez thought the money belonged to Mr. Virgilio Garrido because the Lottery checks were made out in Virgilio's name. Mr. Domínguez never saw or contacted Mr. Virgilio Garrido. He relied on the representations made by Mr. Freddy Víctor Garrido Jiménez. The account was opened in January 2004.

The applicable regulations[2] at the time, and in place since October 2003, required customer identification. The details regarding the opening of an account were handled by RD Capital's Operations Department.

Mr. Domínguez recognized his handwriting in the form used to open the account. (Trial Exhibit A). He included $50,000 - $100,000 in the income space, and $500,000 - $1,000,000 in the individual net worth, based on the amounts being deposited. All the information included in the form was based on Mr. Domínguez' assumptions.

Mr. Domínguez does not remember requiring any information regarding Mr. Virgilio Garrido's education. Mr.Domínguez knows Mr. Virgilio Garrido only through the documents submitted to open the account. Mr. Virgilio Garrido was marked in the form as an inexperienced investor. The form and documents to open the account in the name of Virgilio Garrido were given by Mr. Domínguez to Mr. Freddy Víctor Garrido Jiménez, who later brought them back for processing. RD Capital's Compliance Manual, Trial Exhibit 8, at page 65, specifically states in reference to opening an option account that "[p]rior to such approval, the CROP/SROP will determine that the client is sufficiently aware of the risks involved in naked writing and can bear the financial exposure." Clearly, the requirement was not met.

---

[2]Customer Identification Programs For Broker-Dealers, 31 CFR Part 103, Trial Exhibit 9, and SEC Rule 17a-3(a)(17), implementing Section 326 of the Patriot Act.These two important regulatory rules require that customer information be obtained, albeit for different purposes.

- 4 -

Mr. Virgilio L. Garrido Jiménez testified that, and the court gives full credence to his testimony, he is 44 years old, the highest grade he finished was first grade, and later he went to night school to learn to read. He can read but cannot write in Spanish. He cannot read nor write in the English language. He started working since he was 12 years old. For the past 19 years he has been working as an employee of Onesource, formerly Antilles Cleaners, providing maintenance services to office buildings, currently earning $5.85 per hour. He does not drive as he cannot afford a car, and has never owned a house.

Virgilio is Mr. Freddy Víctor Garrido Jiménez' brother. Freddy Víctor won the lottery and asked Virgilio to cash the tickets for him because he was having problems with his ex-wife. Freddy Víctor assured his brother that it would not cause him any harm. They went together to the lottery to cash the tickets. Freddy Víctor did not give his brother anything in return.

Freddy Víctor Garrido gave his brother Virgilio the documents to open a bank account. He signed the papers, but the telephone number and the address are those of Freddy Víctor. Virgilio does not understand anything on the form used to open the account, he just signed the papers.

After the bank account was opened, Virgilio learned that his health benefits were being cancelled due to the account he opened at Freddy Víctor's request. Virgilio asked Freddy Víctor to take out the money placed in his name so he could have the health card back. Freddy Víctor gave him some papers to this effect but he could not read them.

Virgilio testified that all actions regarding the cashing of the lottery tickets and the opening the bank accounts were done to help his brother. He never received any money. He does not know nor has ever spoken to Mr. Ramón Domínguez or Mr. Jorge Blum.

Ms. Catherine Ríos testified that she was married to Mr. Freddy Víctor Garrido Pagán,

the son of Mr. Freddy Víctor Garrido Jiménez. They divorced by mutual consent in June 2007. She first saw the application and forms to open an account with RD Capital (Trial Exhibits E, F, and G) at her home when her former father in law brought them for her signature. Mr. Freddy Víctor Garrido Jiménez asked her to do him a favor; he had money in his brother's name but had to place it in someone else's name for a short time. After her former husband insisted, she accepted to sign the documents as a favor. Her former husband, Debtor's son, did not sign the documents because he had filed a bankruptcy petition.

The documents signed by Ms. Catherine Ríos were in blank as they would be filled in by someone at the RD Capital. She gave Mr. Freddy Víctor Garrido Jiménez a copy of her driver's license. The account's postal address as indicated in the document corresponds to that of Mr. Freddy Víctor Garrido Jiménez. She was never explained the terms and conditions of opening an account. She never received any funds or consideration in exchange for the favor. She had also previously signed deeds regarding properties belonging to her former father in law.

Ms. Ríos does not know Mr. Domínguez or Mr. Blum and has never talked to them.

Mr. Jorge Blum, testified that he is the compliance officer for RD Capital and oversees compliance with industry rules and regulations. He keeps the brokers informed of changes to the National Association of Securities Dealers (NASD) Rules and Regulations. Amongst the applicable regulations is 31 C.F.R. Part 103, Customer Identification Program (CIP), effective October 2003.

The accounts related to this proceeding were opened after October 2003, so they are subject to the Customer Identification Program. Mr. Blum admits to not having informed the brokers of the change in October 2003. The Customer Identification Program is part of the Anti Laundering Program. The compliance officer, that is, Mr. Jorge Blum, is the one responsible for

- 6 -

the program. The applicable regulations require that the true identity of the customer be known. The regulations requiring customer identification were not followed.

Mr. Blum admitted that the brokers violated the Customer Identification Program because he failed to advise them of the change. However, pursuant to NASD Rule 3011, Mr. Domínguez, as President of RD Capital, is ultimately responsible for the implementation of the Anti Laundering Program. Pursuant to RD Capital's Compliance Manual, Mr. Domínguez is also in charge of continuing education.

When shown the form to open account number 6RD-008525 for Mr. Virgilio Garrido, the space for the I.D. verification is in blank. However, Mr. Blum reviewed the form and assigned an account number. Mr. Blum did not make an independent verification of the declared income. He admits that he never met or spoke with Mr. Virgilio Garrido. He was not involved in the investment part, and in fact, saw Mr. Virgilio Garrido for the first time in court while testifying.

Mr. Blum admits having prepared the letters presented at trial authorizing withdrawal of funds from the account (Trial Exhibits 2, 3, 4, 5, and 6), following the directions of Mr. Freddy Víctor Garrido Jiménez, who represented that the requests were those of his brother. This was done even when the account was in the name of Mr. Virgilio Garrido Jiménez, an account over which nobody else had authority to act. The letters were prepared because Mr. Freddy Víctor Garrido Jiménez would come to the office saying his brother needed money right away. Mr. Blum never verified the signature in the letters he prepared since, in his opinion, this is "a business of trust." In fact, a cursory verification of the signature in page 5 of Trial Exhibit A, the form to open the account with RD Capital, and the signatures in the letters, shows that the signatures are different from that of Mr. Virgilio Garrido Jiménez. When shown Trial Exhibit 1, it clearly appears that the signature in the bankruptcy petition filed by Mr. Freddy Víctor Garrido

- 7 -

Jiménez is similar to the ones in the letters. Mr. Blum either knew, or should have known, that the funds in Mr. Virgilio Garrido's account really belonged to his brother, Mr. Freddy Víctor Garrido Jiménez.

When shown the form to open the account for Ms. Catherine Ríos, Mr. Blum stated that he filled the form as per the instructions of Mr. Freddy Víctor Garrido Jiménez, who informed him that his brother Virgilio wanted to change the account to one under a friend's name. Mr. Blum never verified the signature, he followed Mr. Freddy Víctor Garrido Jiménez' instructions, specifically, to transfer the same information in Virgilio's account to Catherine's. There was no verification of the truthfulness of the instructions. Mr. Blum never asked why the funds were being transferred as he accepted as true that the same were for a friend. The information transferred included the address. This failure is in clear violation of NASD Rule 3110j.

Mr. Blum acknowledged that the NASD Rules require that the Arbitration Agreement be sent to the address of the customer. However, he did not question the fact that the same address was included for the two accounts as, in his opinion, friends can have the same address.

Mr. Blum brazenly admitted having violated his responsibilities of insuring compliance with the NASD Rules and Regulations by not properly verifying the identification for Mr. Virgilio Garrido and Ms. Catherine Ríos, by not verifying their signatures, not meeting or talking to the customers Mr. Virgilio Garrido nor Ms. Catherine Ríos.

The evidence before the court clearly shows that the Debtor engaged in a series of "straw man" transactions in order to conceal, secrete and deplete his significant cash and other assets held in other persons' names, and hide those assets from his creditors. Debtor engaged in this conduct well before filing for bankruptcy, and his scheme was unraveled after

- 8 -

the filing of his petition.

Relevant to this case was a prize for over $438,250 dollars that Debtor won in late 2004. In order to conceal the money, the prize was collected by Virgilio. In order to hide the prize, Debtor sought the brokerage services and advise of RD Capital. In January 2004, Debtor and RD Capital opened a brokerage account under Virgilio Garrido Jiménez' name, all the time knowing that the money belonged to Debtor (the "Account"). A New Account Form ("NAF") was signed by Virgilio when the account was opened. The NAF contains an arbitration agreement.  The account was comprised of or included several ancillary agreements, such as a Margin Agreement ("MA") and an Option Agreement ("OA"), both of which also contained arbitration agreements. The NAF, MA and OA (collectively the "Account Agreements") each contained a clearly legible disclaimer in their respective signature lines, highlighting the existence of the arbitration agreement in each document. Debtor personally procured the account agreement forms, had them filled and signed by Virgilio, and returned them to RD Capital.

In December 2004, Virgilio complained that having the account in his name jeopardized his government health care benefits. As a result, Debtor closed the account and transferred the funds to another account opened with RD Capital in Catherine's name. Just like with Virgilio, all parties knew and understood that the funds in the new account also belonged to Debtor. On this new account, Catherine also signed the documents containing the NAF, MA and OA.  Debtor and Catherine signed a Full Trading Authorization Agreement ("FTAA") making Debtor an agent and attorney in fact for Catherine under the account with unrestricted powers and privileges to transact with Catherine's nominal account. The terms of the FTAA refer back to the "terms and conditions" of the Account Agreements. As was the

case with Virgilio, Debtor took all the necessary steps to open the new account under Catherine's name. Catherine never saw nor met with anyone at RD Capital.

## CORE OR NON CORE

This court has jurisdiction over these proceedings pursuant to 28 U.S.C. § 157(a), which provides that the district court may refer all cases under title 11, and all proceedings arising under title 11, or arising in or related to a case under title 11, to the bankruptcy court of that district. That section further provides in subsection (b) that the bankruptcy court "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a)." Core proceedings are defined in § 157(b)(2), and subsection (3) provides that the bankruptcy judge shall determine whether a proceeding is a core proceeding or is otherwise related to a case under title 11.

A determination of whether a controversy is core or non-core depends upon its relation to the basic functions of the bankruptcy court and not on the federal or state basis for the claim. In re Arnold Print Works, Inc., 815 F.2d 165, 169 (1st Cir. 1987). If the proceeding, by its nature, arises only within the bankruptcy context because it involves a right created by federal bankruptcy law, then it is a core proceeding. In re Wood, 825 F.2d 90, 97 (5th Cir. 1987). If an action would survive outside of bankruptcy, and in the absence of bankruptcy would have been initiated in a state or a district court, then it clearly involves a non-core matter. 1 Lawrence P. King et al., Collier on Bankruptcy P3.01[1][c][iv] at 3-27 (15th ed. 1991), citing In re Colorado Energy Supply, Inc., 728 F.2d 1283 (10th Cir. 1984).

The non-core related actions referred to by 28 U.S.C. § 157(a) are those that "potentially have some effect on the bankruptcy estate, such as altering debtor's rights,

- 10 -

liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankruptcy estate." In re G.S.F. Corporation, 938 F.2d 1467, 1475 (1st Cir. 1991), *abrogated in part on other grounds,* Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992), citing In re Smith, 866 F.2d 576, 580 (3rd Cir. 1989). If the determination of the case could have an effect on the bankruptcy estate, it is a related matter. Id. The intent is to enable bankruptcy courts "to deal efficiently and effectively with the entire universe of matters connected with bankruptcy estates." In re Boston Regional Medical Center, Inc., 410 F.3d 100, 105 (1st Cir. 2005).

Non-core related proceedings are those which are related to cases under title 11. As to this type of proceeding, a bankruptcy judge "shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge ...." 28 U.S.C. § 157(c)(1). The district court conducts a de novo review. In re Sheridan, 362 F.3d 96, 100 (1st Cir. 2004). However, a bankruptcy judge may enter final orders and judgments concerning non-core but related matters if all parties to the proceeding have consented. § 157(c)(2); G.S.F., 938 F.2d at 1476.

Subsection (c)(1) provides that a bankruptcy judge may hear a proceeding that is not a core proceeding, but is otherwise related to a case under title 11; however, the bankruptcy judge should submit proposed findings of fact and conclusions of law to the district court for *de novo* review. Subsection (c)(2) provides that if all the parties to the proceeding consent, the bankruptcy judge may hear and determine the matter and enter appropriate orders and judgments.

A bankruptcy judge may enter interlocutory orders in a matter being tried under § 157(c). 1 Lawrence P. King, et al., Collier on Bankruptcy ¶ 3.03[2] (15th ed. Rev.), citing

- 11 -

Elkins v. X-Alpha Int'l, Ltd. (In re Kennedy), 48 B.R. 621 (Bankr. D. Ariz. 1985); Lesser v. A-Z Assocs., Inc. (In re Lion Capital Group), 46 B.R. 850 (Bankr. S.D.N.Y. 1985). An interlocutory order is one that does not finally determine a cause of action, but only decides some intervening matter pertaining to the cause, and requires further steps to be taken to enable the court to adjudicate the cause on the merits. Collier ¶ 5.07[1][a].

Plaintiff alleges jurisdiction pursuant to 28 U.S.C.A. §1334 and that the proceeding is a core matter under 28 U.S.C.A.§157(b)(2)(J), that is, "objection to discharges." Clearly, not one of the causes of action is an objection to Debtor's discharge[3]. The causes of action herein are aimed at recovering property of the estate for the alleged fraudulent conduct of the defendants. Liberally construed, the actions may arguably come under 11 U.S.C.A. § 157(b)(2)(A, E, or H), which include matters concerning the administration of the estate, orders for the turnover of property of the estate, and proceedings to recover fraudulent conveyances. However, the statutory predicates are the laws of the Commonwealth of Puerto Rico and the Securities and Exchange Act of 1934. The plaintiff does not raise causes of action under 11 U.S.C.A. § 542, turnover of property of the estate, or 11 U.S.C.A. § 548, fraudulent transfers and obligations.[4]

The defendants allege that the proceeding before the court is not a core matter. Plaintiff replies stating that by failing to present the issue they have waived it. The court

---

[3]The court notes that the judgment entered on June 13, 2006, in AP 06-0037 denied the Debtor's discharge.

[4]These are actions that do not derive from the Debtor, and, arguably, the trustee may not be compelled to arbitration. Hays and Co. V. Merrill Lynch, Pierce, Fenner & Smith, 885 F.2d 1149, 1153-1155 (3d Cir. 1989); In re EXDS Inc., 316 B.R. 817 (Bankr. D. Del. 2004); In re Hagerstown Fiber Ltd Partnership, 277 B.R. 181 (Bankr. S.D.N.Y. 2002).

disagrees. The procedural juncture of this case is that defendants' motion to dismiss was denied, and the court scheduled an evidentiary hearing for the limited purpose of determining whether there is a valid arbitration agreement. Defendants have not answered the complaint nor expressly consented to this court entering a final order. In fact, their position is that the matter be submitted to arbitration.

Plaintiff's causes of action could have been initiated before the state or federal courts, but will have an impact on the estate, thus, they are non core related matters. Since the defendants have not consented to this court entering a final order, it may only submit proposed findings and conclusions to the U.S. District Court.

**FEDERAL ARBITRATION ACT AND COURT'S JURISDICTION TO DETERMINE VALIDITY OF ARBITRATION AGREEMENT**

The Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1-16,Section 2, was enacted to overcome judicial resistance to arbitration. Buckeye Check Cashing, Inc. V. Cardegna, 546 U.S. 440 (2006). The Supreme Court in Buckeye held that arbitration clauses are severable from the remainder of the contract, the validity of the entire contract must be considered by the arbitrator in the first instance, and a challenge to the arbitration clause may be decided by a court. Thus, the courts must decide whether there is a valid consent to the arbitration agreement before compelling arbitration. The validity of an arbitration clause or agreement hinges on state contract law. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 552 (1st Cir. 2005); Equal Employment Opportunity Commission v. Woodmen of the World Life Ins. Society, 479 F.3d 561, 565 (8th Cir. 2007).

If the issues before this court were core proceedings, this court would follow the well reasoned analysis in Brown v. Mortgage Electronic Registration Systems, Inc. et al, 354 B.R.

- 13 -

591, 603 (D. R. I 2006), which concluded "that where a conflict exists between the Bankruptcy Code and the FAA, a bankruptcy court retains discretion to decide whether and when to compel arbitration if the at-issue proceeding is core." However, the issues before the court are non core related matters, and this court's discretion is limited.

## DISCUSSION

The parties have agreed in the pretrial report that the ultimate issues to be decided by the court at this juncture are: whether the Debtor, and thus the trustee, agreed to arbitrate any dispute with the Defendants; whether the Debtor, and thus the trustee, is bound by any agreement to arbitrate executed by Virgilio Garrido and Catherine Ríos; whether the agreements to arbitrate executed by Virgilio Garrido and Catherine Ríos are valid and enforceable pursuant to the laws of the Commonwealth of Puerto Rico; and, whether the court should exercise its discretion and deny arbitration.

Pursuant to the laws of Puerto Rico, a "contract exists from the moment one or more persons consent to bind himself or themselves..." 31 L.P.R.A. §3371. The contract "shall only be valid between the parties who execute them and their heirs, . . ."31 L.P.R.A. § 3374. The Debtor was not a party to the arbitration agreement because he did not sign the same. Consequently, the Debtor is not bound by the arbitration agreements signed by Mr. Virgilio Garrido and Ms. Catherine Ríos.

The court agrees with the plaintiff that there is no valid agency contract under the facts of this case. Virgilio Garrido and Catherine Ríos were not binding themselves to render services or do something for the account or at the request of Freddy Víctor Garrido. 31 L.P.R.A. § 4421. Virgilio Garrido and Catherine Ríos were "straw man" to Freddy Víctor Garrido to conceal assets from Debtor's creditors. This fact in undeniable as Freddy Víctor

- 14 -

Garrido plead guilty to an indictment so charging.

## CONCLUSION

In view of the foregoing, this court concludes that the arbitration agreement is not valid against the trustee, as representative of the Debtor's estate, because the Debtor, owner of the funds used to open the accounts at RD Capital, did not sign the same. The court recommends to the U.S. District Court that this conclusion be adopted.

**SO RECOMMENDED.**

**San Juan, Puerto Rico, this 28th day of May, 2008.**

**ENRIQUE S. LAMOUTTE**
**U. S. Bankruptcy Judge**

- 15 -